Your Honor, the United States Court of Appeals for the Third Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Okay, good morning to all, and let's proceed to call the first case. Thank you. Today's cases will be called as previously announced. The times will be as allowed to counsel. The first case today is number 221297 and 221609, United States v. Paul Iwuanyanwu. At this time, would Attorney DeMaso please introduce herself on the record to begin? Good morning, and may it please the Court. I'm Chrissy DeMaso, and I represent Paul Iwuanyanwu. I would like to reserve two minutes for rebuttal. You may. Thank you. Thank you. The District Court imposed a two-point enhancement for the misuse of a means of identification in connection with a bank account opened in the name of S.P. Mr. Iwuanyanwu did not himself open this account. It was not, the enhancement was not based on his own actions. The guidelines provide that someone can receive an enhancement based on someone else's conduct when the government proves by a preponderance that the conduct was within the scope of the joint criminal activity, in furtherance of that activity, and reasonably foreseeable. Here, the government did not prove to a preponderance that it was reasonably foreseeable to Mr. Iwuanyanwu that a co-conspirator would misuse a means of identification. I'd like to start by highlighting three cases. The first is Jones. Could I just interject? Yes. Is it your position that also he knowingly misused the name of a corporation? That he couldn't have knowingly misused the name of an individual? So, first, I just want to be clear that using the name of a corporation cannot support application of this enhancement. Under the terms of the guidelines, it does need to be identification of an individual. Right, but I'm talking about reasonable inferences. Yes, it is my position that he could not, based on that he was participating in a fraud, yes. He pled guilty to participating in a fraud. And in his experience, the way that that fraud worked was he was essentially sent the name of a corporation. He did use false corporate documents to open a bank account, but it was always in his own name. So it was, you know, Mr. Iwuanyanwu doing business as a corporation that he was not affiliated with. That's how he opened multiple accounts. That's how his then-girlfriend opened accounts. That's also consistent with how other parts of the conspiracy that we know about worked. Ronald Brown, who was initially a co-defendant, did the same thing. His own name and then a false corporate identity. Also, victim B, the same thing was done with her. She used her own account and her own name. And this is where I think that Jones and Rizzo are important, because what they talk about is people who have limited roles in conspiracies, even if it's a fraud, even if they are committing some sort of fraud. So the defendant in Jones is taking a fake identification and going into a bank and trying to cash a check. But the court found that it wasn't reasonably foreseeable to her where the information provided on that fake ID was coming from. Okay, but here you're saying limited role, but didn't your client act as an intermediary? He was touting his experience within the offense with all the other co-defendants. What do you have to say about that? So the experience that he's talking about in the text messages is really just experience going to banks and getting this money out. There's a lot that he doesn't know about this conspiracy that no one has ever alleged he knows. He doesn't know how this sort of business email compromise is working. He doesn't know how people are hacking, how they're picking companies, how they're choosing when to send emails, how they're targeting. He doesn't know the background of what's happening with the romance fraud scheme. He simply is told, we want to get this money out of a bank account. Please go open a bank account. And he does that. And in the text messages, which are ambiguous and difficult to read, and I don't think can stand the interpretation that the government is only now putting on them and that the district court did not find that they carried, I don't think that that is enough to show that he could reasonably foresee. So there was a November 2018 phone call between your client and another co-conspirator where they went over in detail this real person's name and lots of details about the person, including social security number, address, et cetera. You're saying that it wasn't a reasonable inference? So I don't believe there's- Why wasn't it a reasonable inference for the court to find that he should have known that that was a real person? So I don't believe that. First of all, I don't think that there are any phone calls. What we have here, we have WhatsApp messages, and then we have some audio messages that go through WhatsApp. And the information that Mr. Iwanyamu receives is SP's name and bank account information. I don't believe that he receives a social security number or even an address that necessarily goes with SP. There is an address for the bank. And what's not reasonably foreseeable to him is what role SP has in that conspiracy. In Mr. Iwanyamu's experience, people are going to banks. They are taking these corporate documents and they are using their own name. He has no way to know that SP is not another co-conspirator. What you see in the text messages is information flowing through Mr. Iwanyamu. He sort of gets account information from More Blessing, and he passes it to Motorola One. And then you see Mr. Iwanyamu talking to Motorola One about their efforts to get the money out of the account. But there's never any information or anything concrete that would tell Mr. Iwanyamu that this particular account diverged from the conspiracy, that it was not the case that someone named SP had gone to the bank and used his own name and his own information and gotten an account that was in the name of Quantac Renovation as well. But that was how the conspiracy had worked from Mr. Iwanyamu's perspective. And indeed, the idea that they would be adding on another layer that could open them up to even more detection may have seemed completely unreasonable to him. That why would we add this fraudulent information when that might be another way that we would get detected in this? Where the fraud really did seem to be people simply opened these accounts in their name, and they went and tried to get the money out using their own identities, their own information, other than that corporate document. It's just not, as in Rizzo, as in Jones, it was just not reasonable to him that there was this additional layer that had been added on in this particular instance. And there's no affirmative information in the record that would tell him that the SP account was different, that it had been opened using a fraudulent document. Well, when you say other than that corporate document, what do you mean by that? You're saying that the fact that there was a corporate document which used someone's identifying information, I guess I go back to the first question, that that's not a reasonable inference that they could have been utilizing an individual's personal information? I think that it's not a reasonable inference. What was happening here was they were using fraudulent corporate documents, but they were also using their own means of identification. So they were essentially opening their names, like, for example, Mr. Iwan Yanwu, DBA Corporation that he was not affiliated with. He never used any false personal identifications in that whatsoever. He would use his own, to the extent he needed it, his own driver's license, his own address, his own name. And the corporate document was, that was information that was given to him by a co-conspirator. They would say to him, hey, this is the business name to use, and he would go and do that. And it's reasonable for him to believe that that's how everyone in his position was operating. And it's reasonable for him to believe that SP was another individual in his position, like Ronald Brown, like Mr. Iwan Yanwu's then-girlfriend, that this was someone who received a business name, was asked to open an account in that name, and otherwise use their own personal information. I have just a few seconds remaining. I would just like to say quickly on the second issue that the substantial financial harm enhancement was also inappropriately applied. The victim simply did not suffer the magnitude of loss that was required by the guidelines, and this enhancement should not have applied. And let me ask you about the magnitude of loss. This is somebody, there's a finding that this is a victim who has no ability to ever recover the money that was lost. Isn't that sufficient for the enhancement? There was no specific finding about her ability. There was information about what her background was. And I think here the magnitude simply was not great enough. Wasn't she on a limited income? She was. She was also receiving information from her ex-husband at the time, and she herself described the money as extra. And I just think that it does not meet the level that the guidelines require the harm that she suffered. Okay, thank you. Thank you. Thank you, counsel. At this time, would Attorney Dave Vincentis please introduce herself on the record to begin? Good morning. May it please the Court. Alexi Vincentis on behalf of the United States. To begin with the unauthorized use of the means of identification, the District Court did not clearly err in finding by preponderance of the evidence that that misuse was reasonably foreseeable to the defendant. As Judge Helpe's questions pointed out, the evidence related to the conduct with respect to the SP account showed that contrary to the defendant's assertion, he was intimately involved with this scheme. He was exchanging information about multiple bank accounts. He was arranging on more than one occasion for specialists to go withdraw the money, and he was touting his experience along the way. He also, as Judge Thompson, you pointed out, he was using falsified corporate documents to open accounts in the names of companies. Furthermore, despite the defendant's emphasis on the evidence apart from the conduct related to SP, he's failing to contend with the fact that what that evidence showed was that if this had been an account that a member of the conspiracy or someone a member of the conspiracy controlled had opened in their names, one would have expected SP to be withdrawing the money from the accounts, as Brown and Nwanyawu did in the case of the corporate accounts they opened in their names, and as victims A and B did in the accounts that were in their names. And instead, what we see is Nwanyawu arranging for specialists to drive from 15 hours away to attempt to withdraw this money, and also passing on messages intended for the owner of the account to more blessing, all while a reasonable view of these text messages suggests that he knew none of these people was SP, and furthermore, doing so without missing a beat. On this record, the District Court did not clearly err. Your sister has an underlying assumption that I'd like to question. She says you cannot infer from the fact that they used false corporate names that they would also use false individual names. Now, that precise issue is not actually before us, because as Judge Thompson has pointed out, there is evidence about SP. But what about the basic inference? It would seem to me somebody who is willing to organize many people to use many false corporate names and to drive 15 miles in order to execute the scheme and to use their own names might very well be reasonable for that person to anticipate that another of the co-conspirators would delve into false names of individuals. We agree wholeheartedly, Judge Lynch. Is there any case law on that point? To my knowledge at the moment, not necessarily. But nonetheless, the inference is obviously a plausible one. The evidence shows that in this case, the defendant on at least two occasions obtained false certificates of incorporation for companies with which he had no affiliation, went to banks and opened accounts attesting to being the sole owner of those corporations. And in the government's view, it's a pretty small step from passing oneself off falsely as the owner of a corporation to then passing oneself off falsely as SP or some other individual who has no affiliation with the conspiracy. That inference in and of itself might not alone support the reasonable foreseeability finding, but certainly it's part of the total mix of information that was available to the District Court from which it could indeed find reasonable foreseeability. Your sister also, when Judge Thompson referred to phone calls, said, oh, no, it wasn't a phone call, it was WhatsApp. So what? Does that make any difference? None whatsoever. The important point is that the information was exchanged. To address just briefly, unless there are further questions on that particular enhancement, I would like to address just briefly the substantial financial hardship enhancement. The government agrees that the example in the guidelines calling for a finding of substantial financial harm in the case of a substantial loss to savings has to be read in light of the other examples. But the defendant isn't so much reading that example in light of the other examples as he is reading it out of the list of examples altogether. There's no indication that in addition to suffering a substantial loss of savings, someone has to, in addition, suffer a change to their day-to-day life activities, which is what the defendant is suggesting. I'm happy to end there. I see that my time is up. No, you still have five minutes. Oh, excuse me. I heard a beep. The important point here is that although the defendant is suggesting that the victim had to suffer a change in her day-to-day activities, essentially, there was hardly room in this case for victim B to have done so. The defendant notes that she didn't suffer a change in employment, but as Judge Thompson observed, this was a disabled woman who could not be employed. The defendant notes that she did not lose a home, but this was a woman who didn't have a home to lose and already lived with her daughter. The defendant points out that it didn't change her gambling pleasures either, so suggesting that she had extra money to spend on some, I guess, pleasurable activities that put her money at risk. It is indeed true, Judge Thompson, that like many vulnerable people, victim B fell prey to vouchers that were sent to her by casinos. But importantly, it appears from this record that that was her sole form of discretionary spending on any form of entertainment. And moreover, even had she curtailed that spending, it still would have been a matter of years before she would have been able to recuperate the money that she was defrauded of by the defendant and his co-conspirators. So there's no money that, I mean, no evidence that she owed money to casinos, right? She just would go there, spend it, and that was it, correct? That's correct. That's all we're able to discern from this record. She just needed one good win. Precisely the thought process that leads many casinos to send these vouchers to people in her position. And the victim should not be faulted for having fell victim to those advertisements. The money that the victim lost was a full 20 percent of her life savings, money that came from the sale of her marital home, money that as the, excuse me, a home that as the victim testified, she and her ex-husband had, quote-unquote, worked their tails off. And that's approximately $6,000, am I correct? Excuse me? The amount is approximately $6,000 she lost, that 20 percent, right? The 20 percent, 20 percent is $6,000, yes. And what you're saying is, like, based on her monthly income and whatever she may have, she can't replenish that, you know? Exactly. Again, even her tailing, her spending at the casino, it would have taken her years to recover that money. And on these facts, there simply cannot be any clear error in the district court's conclusion that she suffered substantial financial hardship. Unless there are further questions, the government is content to rest on its brief. Okay. I don't see any. Thank you very much. And then, Mr. Marcia, you have a two-minute rebuttal. Thank you. If I could return quickly to the misuse of the identification. With respect to Judge Lynch's question about the inference, I do think that there are cases that support Mr. Iwanyanwu's position, that you could not draw the inference based on his participation in a certain fraud that another separate type of fraud would occur. And those cases are Rizzo and Jones, which directly involve a defendant who was involved in one type of fraud, and the question was whether a separate type of fraud or how part of the fraud was being generated through an independent fraud, whether that was reasonably foreseeable. And in both cases, the court held that it was not. I would also draw this Court's attention to Candelaria Silva, which although it was in a different context, does support the idea that someone who has a limited role in a conspiracy cannot reasonably foresee the entirety of the conspiracy. And here... But was it limited? I mean, that's one of the issues. It seemed to be pretty extensive, his involvement. And you're asking us to make a determination that the district court clearly erred, which, as you know, is a rather high standard for us to address. Yes. So he had a specific role. He had a targeted role. He went to banks himself to try to get money out, and he passed bank account information from Motorola One to more blessing to Motorola One. So his involvement is very specific. It is getting money that other people control whether the money is sent to the bank account. Other people are causing the money to be sent. He is not involved in that. He is simply going and getting the money out or giving people account information to which money can be sent. And in his experience, in this limited role, he is seeing people use their own identities, their own names. They are not using fake personal identification information. And it was not reasonably foreseeable to him, based on the nature of what he perceived, that other people involved in this fraud would use. But he knew that there were other people involved. Am I correct? I mean, I think he... Well, there's no... I mean, it was a large conspiracy. I mean, that is sort of known from the facts. And I do think that he certainly knew, you know, that more blessing is involved and that more blessing is sending him various account information that he himself did not open. So someone must have opened those. And he knew from people like... There's just this Motorola One that other people were conducting some sort of fraud that was generating money. Okay. Thank you. Does Lynn have any more questions? Thank you. No. Okay. Thank you both. Good morning. Thank you, counsel.